42 N.J. Super. 275 (1956)
126 A.2d 208
THE STATE OF NEW JERSEY, PLAINTIFF-RESPONDENT,
v.
JOHN FORSYTHE, DEFENDANT-APPELLANT.
Superior Court of New Jersey, Appellate Division.
Argued September 17, 1956.
Decided October 11, 1956.
*277 Before Judges CLAPP, JAYNE and FRANCIS.
Mr. David M. Satz, Jr., Deputy Attorney-General, argued the cause for respondent (Mr. Grover C. Richman, Jr., Attorney-General; Mr. Martin J. Queenan, Prosecutor of Burlington County, on the brief).
Mr. Paul R. Kramer argued the cause for the appellant.
The opinion of the court was delivered by FRANCIS, J.A.D.
This prisoner, who is confined in State Prison, applied for a writ of habeas corpus to attack the validity of the sentences which produced his incarceration. The trial court denied the writ summarily. We reversed and directed a hearing, pointing out that the statements in affidavit form accompanying the petition were uncontradicted and, if true, warranted relief. State v. Forsythe, 38 N.J. Super. 578 (App. Div. 1956). A hearing was held, and the writ discharged. Prisoner appeals.
The record discloses that on July 15, 1952 Forsythe and two companions were arrested and charged with entering *278 without breaking, larceny and atrocious assault and battery. All three engaged the same counsel to represent them and discussed the case with him. On August 18, 1952 they escaped from the county jail. The two companions were apprehended within a short time, following which they pleaded non vult to the charges mentioned and to the additional offense of criminal escape.
Forsythe was not recaptured until February 15, 1953. Twelve days later he was arraigned on three indictments charging entering without breaking, larceny, atrocious assault and battery, and escape. At this time, through the attorney previously retained, he entered pleas of non vult to them.
The pleas were made in open court in the presence of the prisoner. The stenographic record of the proceedings indicates that the court had already received and examined the pre-sentence probation report and announced that he was prepared to impose sentence. Thereupon both the assistant prosecutor and defense counsel made statements with respect thereto. Defense counsel said, among other things:
"On behalf of the defendant, John Forsythe, having previously made the statement to this court concerning the other two defendants, John H. Porta and Henry H. Stengel, I will not review the plea that I made at that particular time, but as far as Forsythe is concerned, on the atrocious assault and battery charge, I merely have this to say, namely, that Forsythe at no time left the automobile. He was the operator of the automobile but he did not enter the Fireside, has not had, nor had anything whatsoever to do with any act of assault and battery upon the victim [the watchman of the place entered] in this particular case. I well realize that the facts and statements as presented by the prosecutor are substantially true in all respects, except the assault and battery charge, and I ask the court to take that into consideration in imposing sentence upon this defendant, to give as much consideration as it possibly can on indictment number 21 dealing with the atrocious assault and battery." (Insertion ours.)
The court then pronounced the sentences, saying:
"John Forsythe, the only difference between you and the other two defendants, your companions in the case, is apparently the fact that you did not actually and physically partake in the atrocious assault and battery, but under the law, you know you are equally *279 guilty with them. On the other hand, the court will take that into consideration in imposing sentence upon you. I will not mete out as much of a sentence as your two companions received on that particular count."
The following consecutive sentences were given: entering without breaking and larceny, 2-3 years; atrocious assault and battery, 3-5 years; and escape, 2-3 years. And the court told Forsythe:
"Your companions to the assault and battery each received five to seven years."
About a year later, February 23, 1954, the prisoner and Porta and Stengel filed a motion for the vacation of all the sentences (except on the escape charge), alleging that these crimes were not severable and therefore only one sentence was proper. The motion was denied by written opinion. On March 17, 1954 Forsythe made an individual application to correct an alleged illegal sentence. One of the grounds urged was that since he had not actually participated in the assault upon the watchman, it was improper to sentence him for that crime. Again relief was denied. In the moving papers on these applications, the claim now relied on was not made.
In this proceeding the allegation is presented that he did not authorize his attorney to enter pleas of non vult for him and that he did not understand that such pleas had been entered.
Quite apart from the testimony which was taken at the hearing before us, the statements referred to above of the assistant prosecutor, defense counsel and the court at the time of plea and sentence, render it unlikely that Forsythe lacked comprehension of the pleas. Moreover, he had a previous criminal record which included a conviction and sentence for armed robbery and later a revocation of parole which was granted after the service of part of the sentence thereon. This experience undoubtedly supplied some education for the proceeding which took place in this instance.
*280 At the hearing Forsythe testified that the indictments were never served upon him, that he never knew the full and exact nature of the charges, that his attorney never went over them with him, that he never authorized the non vult pleas and that he neither heard them being entered nor understood the course that was being taken in his behalf.
On the other hand his attorney, who is described by the trial court as a competent member of the bar and "one who has an excellent reputation for personal and professional integrity," directly contradicted him. He asserted that he went over the charges and the indictments fully with the prisoner, and discussed the circumstances of the offenses with him. After doing so he advised the entry of pleas of non vult and explained "the whole thing to him"; "fully discussed the matter with him." Forsythe did not protest against the pleas but agreed to have them made. The only protest he offered on the subject of innocence at the time was that he did not participate physically in the assault and battery on the watchman.
Manifestly, a sharp issue of credibility existed as between the prisoner and his attorney. On this phase of the matter, it was proper for the prosecution to use the previous criminal record in attacking Forsythe's veracity.
The trial court resolved the issue favorably to the State. He concluded that Forsythe understood fully what pleas were to be made for him; that he agreed upon the proposed action, and that he knew what took place in the courtroom when the pleas were entered and sentence imposed.
In our review of the cause, we recognize the superior opportunity of the trial judge to gauge the credibility of the witnesses. In re Lenkowski, 17 N.J. 191, 193 (1955). Our study of the record not only fails to convince us that his conclusions should be disturbed but on the contrary leaves us unimpressed with the prisoner's veracity.
It is urged upon us by present assigned counsel, who has commendably spent much time and effort in the proceeding, that the convictions should be reversed because (1) copies of the indictments were not served upon Forsythe *281 as required by R.R. 3:5-1; (2) the trial court did not address him personally before accepting the pleas, so as to determine if they were made voluntarily (R.R. 3:5-2), and (3) the court did not "afford [him] an opportunity to make a statement in his own behalf" before pronouncing sentence. R.R. 3:7-10(c). However, as to (1) his attorney obtained copies of the indictments and explained them to him, and as to (2) and (3) the attorney spoke for him and in his presence at arraignment and sentence. But more important, the whole record made is convincing that he had adequate understanding of the charges, of the pleas being offered and that he authorized their presentation. So any possible irregularity as far as these rules are concerned was formal and did not result in prejudice to him.
However, we cannot avoid the comment that a better record might have been made and should be made at the arraignment and sentencing proceedings. The old adage about a stitch in time continues to have meritorious content. Much time, effort and expense can be saved in these days of large numbers of habeas corpus proceedings emanating from State Prison if the issues being advanced so frequently are given fair and proper consideration prior to sentence.
Some time ago a practice adopted in a particular county was commended and recommended for study in other venues. State v. Raicich, 30 N.J. Super. 316 (App. Div. 1954).
In view of the increasing number of writs where the primary complaint is that the prisoner was not represented adequately by personal or assigned counsel, an inquiry at the time of plea or sentence as to his satisfaction with the efforts of counsel would provide a more complete record. In the true administration of the criminal law, there is no misconception of the basic purpose of these inquiries. It is to make certain that every accused is given his full and fair day in court and that when he pleads non vult or guilty he does so with that comprehension of the nature of his act which justice demands.
The order appealed from is affirmed.